Nicholas Barton, Esq. (#183040)
12011 San Vicente Boulevard, Suite 540
Los Angeles, California 90049
Telephone: (310)820-7100
Facsimile: (310)472-9080

In Pro Per

FILED
JUL 08 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

UNITED STATED BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In Re<br><br>Barry I Judenfriend and Jacqueline Anne Judenfriend<br><br>Debtors'. | Case No.2:11-bk-35709-SK<br><br>Chapter 7<br><br>Adv. No. |
| Nicholas Barton,<br><br>Plaintiff,<br><br>v.<br><br>Barry I. Judenfriend, individually and dba Judenfriend Insurance Services; and Jacqueline Anne Judenfriend<br><br>Defendants. | **COMPLAINT OBJECTING TO DISCHARGABILITY OF DEBTS AND FOR NONDISCHARGEABILITY OF DEBTS**<br><br>[11 U.S.C. §§ 523 (a)(2)(A), (a)(2)(B), (a)(4), (a)(6); and 727(a)(2), (a)(3), (a)(4), (a)5)]<br><br>**JURY TRIAL DEMAND**<br><br>Status Conference:<br>Date: [refer to summons]<br>Time: [refer to summons]<br>Place: 255 East Temple, Courtroom 1575, Los Angeles, California 90012 |

COME NOW, PLAINTIFF WITH ITS COMPLAINT, ALLEGES:

1. Nicholas Barton, a creditor in the within Chapter 7 case (Barton. or Plaintiff.) for his complaint against Barry I. Judenfriend, individually and dba Judenfriend Insurance Services (Defendant Barry Judenfriend or Defendant) and Jacqueline Anne Judenfriend (only referred to as Defendant Jacqueline Judenfriend)(Both Defendant and Defendant Jacqueline Judenfriend are sometimes collectively referred to as Defendants).

## JURISDICTION AND VENUE

2. This is an adversary proceeding within the meaning of Federal Rule of Bankruptcy Procedure 7001.

3. This adversary proceeding arises out of and is related to the above-captioned Chapter 7 case before the United States Bankruptcy Court. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334.

4. The causes of action set forth herein are proceedings to determine the dischargeability of particular debts and objections to discharge, and as such, are core proceedings pursuant to 28 U.S.C. §§157(b)(2)(A), (I), (J), and (0).

5. Venue is appropriate based on 28 U.S.C. §§1408 and 1409.

## THE PARTIES

6. Plaintiff Nicholas Barton is a creditor of Debtors.

7. Defendants Barry I. Judenfriend and Jacqueline Anne Judenfriend are the individual debtors, and husband and wife.

8. Defendant-Debtor Barry I Judenfriend "dba Judenfriend Insurance Services" is alleged to be a duly authorized "dba" by the County of Los Angeles as per California law. Despite a diligent search, Plaintiff was, however, unable to locate any such "dba" filing with the Recorder's office of said County. Plaintiff therefore alleges, based upon information and belief, that the contention that Defendant "does business as" Judenfriend Insurance is false. Plaintiff alleges that Defendant-Debtor Barry Judenfriend dba Judenfriend Insurance Services is therefore non-existent in form and substance, and that said debtor is therefore not entitled to a discharge as alleged and prayed for herein.

## GENERAL ALLEGATIONS

### A. The Lease

9. On or about May of 2008, Plaintiff and Defendant executed a five year lease with Douglas Emmett 1996, LLC, ("the Lessor") to occupy and sublease approximately 1,800 square feet of office space at 12011 San Vicente Boulevard, Suite 540, Los Angeles, California 90049 (the "Property"). The Lease also included a separate rooftop lease for a satellite dish. (Both the office and the rooftop leases are hereinafter referred to as the "Lease".). The Lease required leasehold payments beginning at

$4.00 per square foot for the office, and $250 per month for the rooftop lease, with annual increases of 5% each year (on the prior year amounts), beginning in years two, three, four and five. The beginning lease date was July 1, 2008. The ending lease date is approximately June 30, 2013. The security deposit in the approximate amount of $10,000 was paid nearly equally by Plaintiff and Defendant, after factoring in the additional office for Defendant and the initial deposits received from subtenants. This amount also included security deposits received from several subtenants. The purpose of the lease was primarily for Plaintiff to operate and conduct business as a law office, Defendant to operate and conduct business as a life and health insurance producer-agent, individually and in the name of Judenfriend Insurance Services, and to sublease out the remaining leasehold space for profit.

10. The lease payments for the property for years one through years five were and are as follows:

| Lease Year | Leasehold Dates | Approx. Monthly Amt. Due | Approx. Annual Amt Due |
|---|---|---|---|
| 1 | July 1, 2008 through June 30, 2009 | $8,500 | $102,000 |
| 2 | July 1, 2009 through June 30, 2010 | 8,900 | 106,800 |
| 3 | July 1, 2010 through June 30, 2011 | 9,400 | 112,800 |
| 4 | July 1, 2011 through June 30, 2012 | 10,000 | 120,000 |
| 5 | July 1, 2012 through June 30, 2013 | 10,500 | 126,000 |

**B. The Partnership to Lease Property**

11. Prior to and contemporaneous with the date the Lease was executed by Plaintiff and Defendant in May of 2008, Plaintiff and Defendant entered into an oral partnership to lease real property for use as office space (the "Partnership".). This occurred after Plaintiff and Defendant spent several months jointly looking for office space. At all times mentioned herein, Plaintiff and Defendant made material representations, promises, agreements, and entered into an understanding with one another, concerning the partnership terms, rights, obligations, and the operation of the partnership. All partnership terms, rights, and obligations were materially represented as true, and were justifiably and actually relied upon by plaintiff in connection with entering into and continuing the Partnership at all times.

12. The Partnership terms, rights, and obligations of Plaintiff and Defendant during the entire Lease term of five years included the following, but not by way of limitation: Plaintiff and Defendant would pay for the allocable office space in which they were each using, with the

remaining "unused" space to be subleased to subtenants, except for one space that was initially to be used as a conference room; Plaintiff was to occupy one large office at a "year one" valuation of $1,600 per month, and Defendant was allocated one large office at a "year one" valuation of $1,600 per month, plus another small inside office at a "year one" value of $750 per month; For years two through five, Plaintiff was obligated to pay the applicable monthly amount factoring in a 5% increase on the $1,600 for it's office, while Defendant was obligated to pay the applicable monthly amount after factoring in a 5% increase on its $1,600 and $750 offices; All remaining space was to be subleased, with one office to be used as a conference room (which was later converted into an office.);

a. Following the execution of the Lease and remittance of the $10,000 security deposit and the first month lease payment (an amount which included deposits and first month lease payments made by subtenants), the Partnership promises and representations included that all subsequent sublease deposits were to be, and in fact were, held for the partnership in trust by Defendant; Beginning in the second month of lease year one and through the end of lease year five, all sublease lease payments and the monthly lease payment of Plaintiff, were to be paid to Defendant. Defendant would then remit the monthly lease amounts from everyone, including for his portion, to the Lessor.

b. Thus, the Partnership promises and representations included that any and all payments received from Plaintiff, and the sublesses of Plaintiff and Defendant for their subleased space would be remitted to Defendant on behalf of the Partnership, who promised to deposit said sublease payments in a bank account where both Plaintiff and Defendant had signatory authority and control; Defendant represented that he would then write one monthly check to remit all Partnership payments to the building management (the Lessor) towards payment of each entire monthly lease amount for the Lease.

c. As discussed in detail, *infra*, this occurred until on or about August of 2009. At that time, Defendant received Plaintiff's lease payment and several sublease payments but failed to pay the Lessor. Defendant had stolen said lease payments belonging to the Partnership for his own personal use and, based upon information and belief, for the personal use of Defendant

Jacqueline Judenfriend.. Thereafter, Defendant once again began to receive sublease payments from several subtenants (see *infra.*). But, Defendant stole those Partnership funds for his personal use, and based upon information and belief, for the personal use of Defendant Jacqueline Judenfriend. Beginning October of 2010, in an effort to mitigate, Defendant never received another payment from Plaintiff and/or the subtenants because he had demonstrated through his continuing despicable conduct that he was in fact a thief as he had committed fraud, embezzlement, defalcation, etc..., and had breached his fiduciary and other obligations under the Partnership Agreement (see *infra.*)

d. The Partnership promises and representations included that from the beginning of Lease Year One and through Lease Year Five, any and all costs, including the 5% increases, attributed to the remaining office space that was either subleased and/or used as conference room was to be equally divided and paid one-half by Plaintiff and one-half by Defendant; In the event of subtenant vacancies, any and all leasehold costs allocable thereto during the period of said vacancies would be equally divided and paid one-half by Plaintiff and one-half by Defendant:

e. The Partnership promises and representations included that for any and all other costs and/or expenses, regardless of the nature, of or concerning the property to be leased (i.e., improvements, increased cam charges, etc ... ), they would also be equally divided and have to be paid one-half by Plaintiff and one-half by Defendant; Any monthly overpayments from subtenants that resulted in a profit to the partnership would be held by Defendant in trust and equally split between Plaintiff and Defendant;

f. As discussed, *supra*, the Partnership promises and representations included that Plaintiff and Defendant set up a partnership bank account with Bank of America where both had signatory authority; Thus, the monthly payments to the Lessor would equal the amount owed by Plaintiff, the amount owed by Defendant, the amount received by Plaintiff and Defendant from the subtenants, and reduced by any profit or increased by any "sublease shortfall" amounts, if applicable, that would be equally split by Plaintiff and Defendant; At all times, the subtenant payments made to Plaintiff and Defendant were deposited by Defendant in the Partnership bank account..

**C. Lease Year One (July 1, 2008 to June 30, 2009)**

13. On or about July 1, 2008, Plaintiff and Defendant' took possession of the leasehold property. At that time, Plaintiff even vividly recalls Defendant stating "we are partners now" as he shook hands with Plaintiff in Plaintiff's office! Several subtenants also signed subleases, paid security deposits that were remitted to the Lessor, and moved in. At all times during the first year, Plaintiff and Defendant complied with the terms of the Lease and the Partnership. The monthly payments made by Plaintiff, Defendant, and all subtenants for their subleased space exceed the approximate monthly amounts due under the Lease. This resulted in an approximate $250 per month profit. At the end of the first year, Defendant was in fact holding approximately $1,500 in trust as a "profit reserve."

a. After the entire security deposit of approximately $10,500 had been paid to the Lessor in May of 2008 (from Plaintiff's, Defendant's, and subtenant funds), in September of 2008 Defendant received for the Partnership and was therefore holding in trust one security deposit from a subtenant in the amount of $1,600 (David Johnson).

b. Instead of holding that security deposit into trust, Plaintiff alleges that Defendant either used this amount for his own personal and business use and benefit or for his regular lease obligation. That was in contravention to the Partnership agreement. To the current date, Defendant has not accounted for the $1,600 security deposit from Dave Johnson. This constitutes a fraud, concealment, defalcation, and embezzlement.

**D. Lease Year Two (July 1, 2009 to June 30, 2011)**

14. During Lease Year two, Plaintiff and Defendant had several vacancies after some subtenants moved-out. Specifically, three subtenants that had been paying approximately $3,300 per month vacated and terminated their subleases. For many months, Defendant also refused and failed to pay for the full amount of its regular lease payments (i.e., their Year one amounts of $1,600 plus $750, increased by 5% in the second lease year). Defendant also refused and failed to pay for its one-half share of the "shortfall" caused by several subtenant vacancies.

15. For the month of July, 2009, the subtenant shortfall due for the monthly lease payment was paid in part by using the approximate $1,500 of reserve funds (partnership profits)

that Defendant was holding in the partnership bank account. The profit-reserves had been created in year one from excessive subtenant payments.

a. As of July, 2009, Defendant represented that he was not holding any additional funds on behalf of the partnership. In Lease Year One, the representations were false. Defendant had received on behalf of the partnership the $1,600 security deposit from subtenant Dave Johnson. Defendant misrepresented the true facts and actively concealed that it was still holding these funds, which Plaintiff reasonably relied upon to his detriment.

b.. From July 1, 2009 through June 30, 2010, Plaintiff timely paid for his office space $1,680 (year one amount of $1,600 plus 5%o increase for year 2), plus one-half of all amounts that were "short" because of the subtenant vacancies.

c. For the month of July of 2009, although Defendant used approximately one-half, or $750 (out of the $1,500 of reserve partnership profits) toward his share of the allocable lease payments, he failed to pay his remaining amount due.

d. For the month on or about August of 2009, Defendant stole the monthly lease payment of Plaintiff, Dave Johnson, and other tenants. The total amount stolen was approximately $4,000. On or about September of 2009, the partners received a three day notice to pay rent or quit. The three day notice was caused by Defendant's theft of Plaintiff's and subtenants funds, and from Defendant's failure to timely pay his allocable share of the lease payments for July and August of 2009.

16. Plaintiff angrily confronted Defendant about stealing the lease payments. Defendant admitted to the theft, and to using the funds for his personal use. Defendant made representations that he would immediately "clear the matter up" with the Lessor. These representations were false. Plaintiff reasonably relied upon them to his detriment. Although Defendant "made up" for some of the stolen funds, he did so by failing to make his portion of the monthly lease payments for August, 2009, and at various times thereafter. In fact, July of 2009 and August of 2009 proved to be the initial months in which Defendant's misconduct continued to "snowball" and lead to his eventually owing the Lessor approximately $24,000 (see *infra*).

17. Thus, from July 1, 2009 through June 30, 2010, Defendant had stolen funds from Plaintiff and other subtenants, and had failed to pay the full amount for their two allocated offices, and/or or the additional one-half of all amounts that were "short" because of the subtenant vacancies. This caused Plaintiff and Defendant to receive multiple eviction notices. On numerous occasions, Defendant made multiple representations and statements to the Lessor and to Plaintiff that he would "take care" of all past due amounts. These representations were false. Plaintiff reasonably relied upon these representations to his material detriment.

a. Instead of "clearing the matter up", the balance due to the Lessor solely and proximately caused by Defendant's theft of funds, and from his failure to remit his allocable payments under the Lease as per the partnership agreement, continued to grow. Moreover, over the ensuing year plus, Defendant remitted approximately three to five payments to the Lessor that were returned as "bounced checks" due to insufficient funds. In addition to other written evidence, the "bounced" NSF checks alone satisfy the writing requirement of 11 U.S.C. § 523(a)(2) (see *infra.*).

b. Plaintiff alleges that Defendant bounced checks to the Lessor included funds due from Defendant, as well as funds received from subtenants that Defendant promised and was obligated to pay to the Lessor, but instead used for his personal use and benefit and, based upon information and belief, for the benefit of Defendant Jacqueline Judenfriend. Defendant's conduct was intentional and deliberate. Each time Defendant bounced a check, he represented to Plaintiff that he would "clear the matter up." Defendant failed to do so. Defendants representations were false, which Plaintiff reasonably relied upon to his material detriment.

c. Additional discovery is required to determine the precise amount of Plaintiff's and subtenant funds that Defendant unlawfully took from the Partnership. Ultimately, when combined with the monthly lease amount allocated to Defendant (under the partnership agreement) failed to pay, the amount reached approximately $24,000 as alleged herein. Additional discovery is necessary because Defendant continues to conceal the precise amount of money (and documents) he stole from the Partnership, and has failed to produce documents to Plaintiff per reasonable requests made well before the instant chapter seven filing.

d. Specifically, in addition to the amounts that Plaintiff alleges Defendant took from the Partnership in July, August, and September of 2010, and the amounts he took on or about August of 2009, Plaintiff is informed and believes that Defendant may have unlawfully taken funds he received from subtenant Noreen Frasier during March through June 30, 2010. This would include the automatic deposits that Defendant received from a subtenant, Noreen Frasier.

e. Further, during Lease Year two, instead of holding subtenant security deposits in trust for the partnership (again, these are subtenant security deposits received after the first month of the lease, as the security deposits received from the initial subtenants were paid to the Lessor), Defendant used new subtenant security deposits for his own personal and business use and towards his allocable partnership lease obligation (i.e., Defendant's lease payment for the two offices plus the shortfall because of subtenant vacancies.) The total amount of security deposits received, used, and never accounted for and remitted back to the Partnership by Defendant was approximately $5,200 ($1,600 plus $850 plus $700 plus $2,100.).

f. As Defendant continued to "grow his share" of the partnership debt to the Lessor, in order to avoid imminent eviction Plaintiff also allowed Defendant to temporarily "use" a couple of security deposits received from two subtenants to make up for his current failure to make his allocable share of the lease payment. Defendant represented that he would timely repay Plaintiff. These representations were false, which Plaintiff reasonably relied upon to his detriment, Plaintiff's damage just from this misconduct is approximately $5,200.

18. On or about June 30, 2010, Defendant had failed to pay approximately $17,730 of lease payments and late fees attributed solely to Defendant's theft of funds, and from his failure to make timely payments for his fully allocated lease payment per the Partnership agreement from July 1, 2009 through June 30, 2010. Some portion of this amount was attributed to the unlawful taking of funds from the partnership by Defendant. As a result of their delinquency, Defendant also caused the Lessor to charge an additional $2,497 for attorneys fees and other delinquency costs. The total amount that Defendant had previously taken and failed to pay and had caused to be owed through its own actions, inactions, and conduct through June 30, 2010 was therefore $20,228, which the Lessor increased to $24,000 with late fees, etc...

19. Numerous times from July 1, 2009 through July of 2010, Plaintiff and Defendant were facing eviction solely as a direct and proximate result of Defendant failure to timely remit its full payments under the Lease and the partnership agreement (i.e., from funds unlawfully taken from Plaintiff and subtenants). In July of 2010, Defendant went for a "hail Mary." Defendant alone contacted the Lessor and arranged for its past due amounts to be "deferred" under a payment schedule with Lessor. Defendant negotiated all terms and conditions with Lessor.

20. The deferral agreement was comprised of a promissory note and a first amendment thereto for base lease, late fees, and attorneys fees in the approximate amount of $24,000. Plaintiff was forced to sign the promissory note and first amendment to the lease while under economic duress. Although Plaintiff had fully complied with all aspects of the Partnership agreement and owed nothing for past due amounts as of July of 2010, Plaintiff and Defendant would have been evicted if they had both not executed the promissory note and first amendment to the lease. Plaintiff executed the deferral documents to limited liability and to mitigate.

a. Prior to and contemporaneous with the execution of the deferral documents, Defendant represented to Plaintiff that it would pay all amounts due under the promissory note and first amendment to the Lease. The $24,000 repayment plan required a lump sum payment of approximately $4,000, plus monthly payments of approximately $1,000.

b. Plaintiff relied upon Defendant's representations that it would repay the entire balance due of $24,000, and therefore executed the promissory note and first amendment to the Lease. Note that the $2,300 or so of attorneys fees included in the $24,000 were caused by Defendant's unilateral negotiations and dealings with the Lessor, and from the necessity of the Lessor to defer Defendant's past due balance.

21. Thus, during the second (and third) year of the lease, Defendant essentially stopped paying for his allocable share of the lease payments on a timely basis, had stolen and continued to steal Plaintiff's and other subtenant funds, and sometimes entirely. Defendant's failure to pay included the amount due for his office space (before it was subletted) and for his share of the vacant space after several subtenants moved out. This caused the partners to jointly receive approximately three to five three day notices to pay rent or quit. Each time the partners received a

3 day notice, said Defendant made knowingly false representations that "he resolved the matter" by negotiating with the Lessor. By the end of lease year two, Defendant owed approximately $24,000 for his partnership share of the lease payments, late fees, and attorneys fees.

22. At that time, Defendant had entered into negotiations (by himself!) with a high ranking executive (Alan Golad) and other employees of the Lessor. Defendant then negotiated a repayment plan for the $24,000. Defendant alone promised to pay approximately $4,000 immediately, and approximately $1,000 per month for twenty months beginning on November 1, 2010. The repayment plan was written in the form of a first amendment to the lease and an accompanying promissory note.

23. Plaintiff is informed and believes that on or about November of 2010, Defendant made the first payment due of approximately $1,000. Plaintiff is further informed and believes that Defendant second payment in December, 2010, which was to include his second payment of $1,000 plus his allocable lease payment (about $500) was returned for insufficient funds, "or bounced." Thus, as of the date Defendant stopped making payments in November of 2010, there remained a balance due of approximately $19,200 plus accrued interest at 7%.

**E. Lease Year Three (July 1, 2010 to June 30, 2011)**

24. In July of 2010, Plaintiff was advised from the Lessor that the amendment and accompanying promissory note resulted in a "zero past due" balance as of July 1, 2010. Stated differently, since the $24,000 promissory note caused by Defendant Judenfriend had to be paid off separately from ongoing lease payments, the $24,000 past due amount before July 1, 2010 was to be no longer shown on the partners monthly invoice from the Lessor. The July, 2010 was to start as a "clean slate" with zero amount due and owing, and the $24,000 deferral would be paid $4,000 in July of 2010 and the $20,000 would be reflected as charges of $1,000 per month on the partners invoices beginning November, 2010 for twenty more months..

a. Defendant falsely represented that he would make these payments, concealed that he was instead taking subtenant funds, and falsely represented at first that he was not taking subtenant funds.

b. After Defendant made the first scheduled payment on November of 2010, and defaulted on the remaining payments. In order to mitigate, Plaintiff has and continues to make the subsequent $1,000 payments for December, 2010, through the current date. Plaintiff will have to continue to making Defendant's payments for another 12 months.

c. Thus, Plaintiff's damages from Defendant's fraudulent conduct that is solely attributed to the first amendment to the lease and promissory note to repay the $20,000 over 20 months will be at least in the approximate amount of $19,000, plus 7% interest as stated in the promissory note.

25. Plaintiff has also incurred additional non-dischargeable damages. On or about October of 2010, Plaintiff was advised by the Lessor that the partners owed $12.800 for unpaid lease amounts for July, August, September, and October of 2010. Defendant was the sole cause of this unpaid amount, most if not all of which was attributed to his failure to pay amounts for his share of the lease charges (which he had promised to make) and from his apparent unlawful theft-conversion of subtenant funds that were paid to him via automatic deposit from a subtenant. apparently to his Citibank account and from another subtenant who paid by check.

a. Upon learning that Defendant had misappropriated most of the $12,800, Plaintiff confronted both Defendants as to the shortfall, including Plaintiff's accusation of Defendant's theft-conversion of subtenant funds that he had a fiduciary duty to not use for his own (and/or for Defendant Jacqueline Judenfriend's) personal benefit and/or other use.

26. Defendants initially denied stealing the subtenant funds. After continued discussions, both Defendants later essentially admitted to unlawfully taking subtenant funds and had absolutely no defense for causing the "new" $12,800 balance due to the Lessor. Since Defendant was subleasing his office at the time, and as the building was full of subtenants, Defendant's additional out-of-pocket payment not paid by subtenants was approximately $300 to $500 per month. Thus, if Defendant had in fact only missed his $300 to $500 payment for July, August, and September of 2010 to the Lessor, as of October of 2010 Defendant would have only owed about $1,500.

a. Plaintiff once again confronted both Defendants with these facts, and they could no longer deny not causing the $12,800 balance due to the Lessor as a result of the theft of

subtenant funds and not paying Defendant's share of the lease amount. Although Defendant had promised to provide all documents with respect thereto on June 15, 2011, he had not produced same prior to the bankruptcy filing on June 14, 2011. On or about October of 2010, Defendant refused to provide any and all documents evidencing the creation of the $12,800 balance due.

b. Plaintiff is advised that approximately $8,000 of the Partnership's subtenant funds was stolen by Defendant and unlawfully diverted to the personal use and benefit of both Defendants. Instead of remitting said funds to the lessor per Defendant's ongoing fiduciary duty to do just that. he failed to do so. After apologizing to Plaintiff, Defendant orally and in writing promised to repay the $12,800 funds to Plaintiff within sixty 'days. The promissory note evidences said Defendant's fraud and non-payments because the partners should not have had a balance due following his negotiation and our execution of the first amendment to the lease and promissory note dated July of 2010.

c. Stated differently, at no time before October of 2010 did Plaintiff not pay his allocable share of any and all lease payments. Thus, the $24,000 (first amendment and promissory note) and the $12,800 (July through September of 2010) were solely and proximately caused by Defendant. Based upon information and belief, Defendant unlawfully took and both Defendants' received misappropriated subtenant funds from the partnership while they had a negative net worth. Based upon information and belief, when he negotiated and executed the $24,000 promissory note and first amendment to the lease, Defendant represented that he had the ability to pay the initial $4,000 payment and the financial ability to make the $1,000 per month payments for 20 months beginning November 1, 2010. These representations were false. Based upon information and belief, Defendant had a negative net worth during these time periods. Defendant therefore received subtenant money by making false statements in writing, false representations, false pretenses, and fraud

27. Defendant's representations to Plaintiff about paying off the $12,800 on a timely basis were in fact false. Plaintiff reasonably relied upon said representations to his detriment.

a. To repay the $12,800, Defendant made one "cash" payment of $100 (Defendant insisted on paying cash because he was apparently concealing a secret bank account from

Plaintiff), and gave Plaintiff a used telephone system in the approximate value of $550. There is still a balance due of approximately $12,100 with respect to the $12,800.

b. The converted funds have disappeared, and Plaintiff learned that most of these funds had been direct deposited apparently by one of the Partnership's subtenants to the Citibank account of Defendant. These amounts were then apparently taken by both Defendants to use for their personal purposes, including the possible payment of their home loan. (an additional subpoena will be necessary.) Note that there is also a possibility that theft of subtenant funds in this manner occurred before July of 2010, but additional discovery will be necessary.).

28. The true facts are that Defendant never had any intention of fully complying with repaying the entirely $24,000, which included a required up front $4,000 lump sum payment and the $20,000 promissory note for the first amendment to the lease attributed to Defendant's prior failure to make his share of the lease payments under our partnership for twenty months beginning November, 2010..

a. The theft of subtenant funds both BEFORE and AFTER Defendant executed the first amendment to the lease and promissory note thereon evidences said Defendant's fraudulent intent and concealments in entering into the $24,000 lease amendment and promissory note, and the $12,800 promissory note from Defendant to Plaintiff.

b. Said Defendant's fraud is also evidenced by the fact that the only made one of the twenty $1,000 payments under the promissory note, most likely using funds he previously received from the subtenants (discovery is stayed and "pending" on this issue).

29. To make matters worse, at all times mentioned above Defendant intentionally concealed and misrepresented the true facts both before and after the first lease amendment and promissory note were executed, and while he was unlawfully taking our subtenant funds for the personal and business use and benefit of both Defendants.

30. That is, Defendant had apparently already stolen subtenant funds on the first of the month for the July, 2010, lease payment, which was about three weeks BEFORE he later made representations and signed the first amendment and promissory note as to the $24,000. In other words, Defendant was taking money from the Partnership at the same time he was negotiating

and promising to repay the $24,000 attributed to lease year two (i.e., June 30, 2010 and beforehand). At the time, Plaintiff asked Defendant to produce these records, and he refused.

31. While he was undertaking the negotiations with the Lessor and before making the representations to Plaintiff that he would pay the entire $24,000 attributed to pre-July, 2010 amounts due, Defendant was well aware that his continued taking of subtenant funds in July, August, and September was certain to result in another three day notice and a breach of the $24,000 promissory note and first amendment to the lease. Thus, before and after representing that he would pay the entirety of the $24,000, Defendant was separately assuring through his conduct the viability and likely failure of the partnership.

32. Defendant misrepresented his true intentions, and intentionally and deliberately concealed these facts, from Plaintiff reasonably relied upon the representations and concealments, to his material detriment.

33. As demonstrated by his representations, concealments, and conduct (and lack thereof), Defendant is a sham. Defendant never had an intention of fully complying with repaying the promissory note for the first amendment to the lease in the amount of $24,000 attributed to his prior failure to make his share of the lease payments under our partnership.

34. Defendant misappropriated partnership funds, committed fraud, and breached fiduciary duties, including with respect to taking subtenant funds, and in negotiating and entering into the first amendment to the lease and accompanying promissory note. For lease years Two and Three, Plaintiff alleges that he has incurred compensatory damages (excluding punitive damages, etc ... ) in the amount of approximately $30,000 to possibly as high as $40,000.

35. Plaintiff alleges that when Defendant unlawfully used the funds he received from subtenants on behalf of the partnership that should have been deposited and held as security deposits and used for lease payments, said use included the payment towards their residential loan of both Defendants for their personal residence located at 13108 Nimrod Place, Los Angeles, California 90049 and/or for medical expenses of Defendant's father (Jacqui Judenfriend's father-in-law), or for other non-partnership uses.

36. For the lease month of December 1, 2010 through the date before his bankruptcy filing, Defendant failed to make payments for his regular leasehold amounts (i.e., amounts which are separate from the $1,000 per month that are due under the deferral agreement Defendant arranged with and promised to pay to the Lessor) in the approximate amount of $4,000 for the period of December of 2010 through June of 2011.

37. On or about February of 2011, Defendant began "negotiations" with the Lessor in an attempt to "lower" his monthly payments for the Lease Year Two deferral agreement under the promissory note and first amendment to the Lease.

38. Specifically, Defendant wanted to reduce the amount to $500 per month, from the $1,000 amount that was scheduled to be paid until completion. The Lessor agreed to the reduction, but the Partners did not. But Defendant ceased making any payments to the Lessor for the deferral under the Lease Year two promissory note. Defendant also refused and failed to make the monthly lease payment in the approximate amount of $500 for his remaining small office.

39. Through and including May of 2011, Defendant continued to occupy the small office . that was allocated a $750 price in the first year. Since Defendant subleased his allocated $1,600 office (as per Year one valuation), his monthly amount due during Lease Year three has averaged between $300 and $500. Defendant occupied the small $750 office but was not paying anything towards their monthly allocated amount.

40. Defendant has received subtenant funds by false pretenses, defalcated, defrauded, made false representations and concealments, made false statements to his financial condition in entering into the partnership, in entering the lease, in negotiating the first amendment and accompanying promissory note, in taking subtenant funds, and in negotiating and executing the $12,800 promissory note from Defendant to Plaintiff.

**F. <u>Security Deposits Held and/or Used by Defendant</u>**

41. Plaintiff alleges that Defendant received, deposited, and used for their own personal and business benefit, security deposits from subtenants in the approximate amount of $5,250 ($1,600 plus $2,100 plus $850 plus $700). For this conduct alone, Defendant has failed to

account for said funds. Plaintiff has been damaged in the amount of $5,200 and seeks a constructive trust over said amounts to the extent they are being held by Defendant.

**G. Defendant Barry Judenfriend's Secret Partnership Bank Accounts that he has Concealed from Plaintiff Barton.**

42. When the partnership was first formed, Plaintiff and Defendant agreed to set up a joint bank account with Bank of America. The account was set up. Both Plaintiff and Defendant were to have access to the account. Further, Plaintiff received an account number and password for the online account.

43. At the inception of the partnership, Plaintiff and Defendant agreed that all payments from all subtenants and Plaintiff would first be made to their Bank of America account. The parties also agreed that Defendant was to take all monthly lease payments deposited and remit those to the Lessor.

44. Defendant has concealed from Plaintiff that he set up one or more financial accounts that were used for operations of the Partnership. The secret bank accounts of Defendant include at least one set up at Citibank. Despite numerous requests for all documents evidencing final transactions of the operation of the Partnership, Defendant has refused to produce same in an effort to conceal his fraud, defalcations, conversion, and other misconduct as alleged herein.

**H. Conversion and Intentional Interference with Third Party Contracts by Defendant Jacqueline Judenfriend.**

45. As alleged hereinabove, at all times mentioned herein, based upon information and belief Defendant Jacqueline Judenfriend knowingly, intentionally, deliberately, purposefully, willfully, and maliciously participated in the unlawful taking of partnership funds for the personal and/or business use and benefit of both Defendants. This includes but is not limited to her use of funds received from subtenants that should have been paid to the Lessor Douglas Emmett. Through her misconduct, Defendant Jacqueline Judenfriend intentionally interfered with the contracts between the partners and their subtenants.

**I. Prior Damages Incurred by Plaintiff.**

46. As a proximate cause and result of the prior conduct and misconduct of Defendant, as hereinbefore alleged, the Plaintiff has suffered damages according to proof but which is estimated to total at least $30,000 to $40,000.

47. As a proximate cause and result of the conduct and misconduct of Defendant Jacqueline Judenfriend, as hereinbefore alleged, Plaintiff has suffered damages according to proof but which is estimated to total at least $8,000.

**J. Future Damages to be Incurred by Plaintiff for Lease Years Four and Five (July 1, 2011 to June 30, 2013)**

48. As a result of Defendant's prior misconduct in causing damages to Plaintiff, he is liable for all future damages arising therefrom. For the remainder of Lease years four and five, Plaintiff alleges that as a direct and proximate result of Defendant's misconduct as hereinbefore alleged, Defendant is reasonably certain to cause compensatory damages in the approximate amount of $110,000. Defendant will be given credit against said amount for one-half of all subtenant payments hereinafter received during the remainder of Lease years four and five.

**K. Other Acts of Defendant that would Prevent Discharge.**

49. Based upon information and belief, Plaintiff alleges that within the last six months, Defendants received a security deposit in the approximate amount of $30,000 to possibly as high as $48,000 pursuant to a lease for theirs subject residence on Nimrod Place.

a. The lease was entered on or about January of 2011. The tenant was apparently Tom Small, a creditor listed on the instant chapter seven petition. Defendant allegedly owes Small approximately $99,000.

b. In June of 2011, Plaintiff made a written inquiry of counsel for Defendant as to whether or not Defendant unlawfully stole the security deposit of Small. Counsel for Defendant refused to substantively respond thereto by falsely alleging that Plaintiff was "prosecuting" a state court action..

c. As a result of counsel for Defendant to refute the allegations, Plaintiff therefore continues to be advised, informed, and thereon believes that Defendant has failed to properly list and account for the precise whereabouts of the Tom Small security deposit in this chapter seven petition. (see *infra*)

**FIRST CLAIM FOR RELIEF**

**Objection to Dischargeability of Debt - Money Obtained by Defendant by False Pretenses, False Representations, and/or Actual Fraud (Negligent Misrepresentation, Intentional Misrepresentation, and/or Concealment)**

**11 U.S. C. § 523(a)(2)(A)**

**By Plaintiff against Defendant Barry Judenfriend**

50. The allegations of paragraphs 1 through 49 are re-alleged and incorporated herein by reference.

51. As set forth hereinabove, Defendant made representations to, and concealed facts from, Plaintiff.

52. As set forth hereinabove, Defendant made intentional misrepresentations and concealments of fact, both orally and in writing, in connection with the promises, representations, agreements, and understandings as to the following, but not by way of limitation: Defendant's financial condition at all times, Defendant's representations with respect to entering into the partnership with Plaintiff, in entering into and false intent to perform under the Lease, the partnership agreement, the First Amendment to the Lease and related promissory note, and the oral and written promissory note to timely repay $12,800 to Plaintiff; in concealing the theft of funds from subtenants and the secret bank account from Plaintiff, etc as alleged herein.

53. At the times Defendant made each and all of these representations. Defendant knew his representations were false.

54. At the times Defendant made each and all of these representations, Defendant made the representations with the intention and purpose to deceive Plaintiff. The omissions, concealments, and fraudulent acts were made by Defendant as alleged herein with the intention to defraud Plaintiff and to induce Plaintiff to act as alleged herein. The intentionally

false representations were made by Defendant as alleged herein with the intent to defraud Plaintiff and to induce Plaintiff to act as alleged herein.

55. Plaintiff reasonably relied upon the omissions, concealments, and fraudulent acts of Defendant as alleged herein in taking the actions alleged herein.

56. Had Plaintiff known that Defendant were making intentionally false misrepresentations, Plaintiff would not have entered into these transactions with Defendant. Had Plaintiff known that Defendant were making omissions and concealments, Plaintiff would not have entered into these transactions with Defendant.

57. Defendant was under a duty to disclose these facts to the Plaintiff as alleged herein.

58. Defendant's defalcations include, but are not limited to the following: Defendant (a) Failed to properly account to the Plaintiff for the unauthorized withdrawal of an estimated $8,000 of partnership funds, and perhaps more; (b) Failed to properly account to the Plaintiff for said Defendant operation of the partnership business with respect to handling funds received from subtenants and the disbursements thereof; (c) Failed to properly administer the partnership business in a professional and businesslike manner. (d) Otherwise depleted partnership assets; (e) Converted partnership assets to Defendant' personal use and/or business use; and (f) Failed to honor partnership contracts. Plaintiff alleges that Defendant acted with malice and extreme recklessness.

59. The damages Plaintiff suffered proximately resulted from the representations (and omissions) of Defendant.

60. Plaintiff is entitled to a judgment for damages and that the debts alleged herein above are nondischargeable.

61. In addition, Plaintiff is entitled to an award of punitive damages due to Defendant's conduct alleged herein.

62. Defendant's discharge of this debt should be denied pursuant to §523 (a)(2) as a breach of his fiduciary duties, fraud, defalcation, larceny, conversion, and embezzlement.

**SECOND CLAIM FOR RELIEF**

**Objection to Dischargeability of Debt - Use of Materially False Statement in Writing Concerning Defendant's Financial Condition**

**11 U.S. C. § 523(a)(2)(B)**

**8y Plaintiff against Defendant Barry Judenfriend**

63. Plaintiff reincorporates paragraphs 1 through 62 as through set forth in full herein.

64 Defendant made representations of fact (and omissions), e.g., concerning personal and business financial status and uses of partnership monies, and of Defendants financial condition at all times mentioned hereinabove.

65. Defendant's representations were material.

66. At the time Defendant made his representations (and his omissions), Defendant knew his representations (and omissions) were false.

67. At the time Defendant made his representations (and his omissions), Defendant made them with the intention to deceive Plaintiff.

68. Plaintiff relied on the representations (and omissions).

69. The reliance was reasonable.

70. The damages Plaintiff suffered were proximately resulted from the representations (and omissions).

71. Plaintiff is entitled to a judgment for damages and that the debts alleged herein above are nondischargeable.

72. In addition, Plaintiff is entitled to an award of punitive damages due to Defendant's conduct alleged herein.

73. Defendant's discharge of this debt should be denied pursuant to §§ 523(a)(2) and (4) as a breach of his fiduciary duties, fraud, defalcation, larceny, conversion, and embezzlement.

**THIRD CLAIM FOR RELIEF**

**Objection to Dischargeability of Debt - Fraud and Defalcation While Acting in a Fiduciary Capacity, Embezzlement, and/or Larceny**

**11 U.S. C. § 523(a)(4)**

**By Plaintiff against Defendant Barry Judenfriend**

74. Plaintiff reincorporates paragraphs 1 through 73 as through set forth in full herein.

75. As partners in the partnership, Plaintiff and Defendant Barry Judenfriend were each acting in a fiduciary capacity vis a vis one another as that term is used in 11 U.S.C. Section 523(a)(4).

76. Defendant acted in a fiduciary relationship when the alleged wrongful acts giving rise to the aforementioned conduct occurred; and (2) debtor committed fraud, defalcation, embezzlement, and larceny with actual wrongful intent.

77. Defendant, as trustee of Plaintiff, and in all proceedings connected with the conduct of the Partnership, every partner was bound to act in the highest good faith to his co-partner and may not obtain any advantage over him in the partnership affairs by the slightest misrepresentation, concealment, threat or adverse pressure of any kind.

78. As partners in the ownership and operation of the partnership, Plaintiff and Defendant bore a confidential and fiduciary relationship to each other. As partners, neither had the right to take an unfair advantage or secure an undue benefit, and the burden is on the one seeking an advantage to show complete good faith and fairness toward the other. The duty of good faith extended to the operation of the partnership, including the receipt, holding, and disposition of partnership funds.

79. As hereinbefore alleged, Defendant had a confidential and fiduciary relationship with Plaintiff whereby said defendant took unfair advantage and secured an undue benefit.

80. Plaintiff alleges that in his capacity as partner, Defendant, for his own personal benefit, transferred or caused to be transferred, and unlawfully retained and converted, partnership. funds, committed fraud, defalcation, larceny, and embezzlement.

81. As a direct and proximate result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial. The damages resulting from the acts alleged above are nondischargeable under 11 U.S.C. § 523(a)(4). Defendant's actions, as alleged herein, were not mere negligence or a breach of ordinary care. Plaintiff is entitled to judgment therefore.

82. In addition, Plaintiff is entitled to an award of punitive damages due to Defendant's conduct alleged herein.

83. Defendant's discharge of this debt should be denied pursuant to §523(a)(4) as a breach of his fiduciary duties, fraud, defalcation, larceny, conversion, and embezzlement.

**FOURTH CLAIM FOR RELIEF**

**Objection to Dischargeability of Debt - Willful and Malicious Injury to Another Entity and/or Property of Another Entity**

**11 U.S. C. § 523(a)(6)**

**By Plaintiff against Defendant Barry Judenfriend and Jacqueline Judenfriend**

84. Plaintiff reincorporates paragraphs 1 through 83 as through set forth in full herein.

85. Plaintiff alleges Defendant had a subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct.

86. Defendant's conduct, as hereinbefore alleged, constitutes a willful and malicious injury to the Plaintiff's interest in the partnership, in the partnership property, and to the property of Plaintiff.

87. As alleged hereinbefore, Plaintiff alleges that Defendant committed (1) wrongful act, (2) done intentionally, (3) which necessarily and proximately caused injury, and (4) were done without just cause or excuse. Defendant's actions, alleged herein above, were taken with the knowledge and understanding his actions had no merit. Defendant knew the injury was substantially certain to occur.

88. Defendant's actions constituted malice. . Defendant's malice is also inferred based on the nature of the wrongful act, and from willful acts.

89. As a direct and proximate result of the foregoing, Plaintiff has been damaged in an amount to be determined at trial. The damages resulting from the acts alleged above are nondischargeable under 11 U.S.C. § 523(a)(6). Defendant's actions, as alleged herein, were not mere negligence or a breach of ordinary care. Plaintiff is entitled to judgment therefore.

90. In addition, Plaintiff is entitled to an award of punitive damages due to Defendant's conduct alleged herein.

91. Defendant's discharge of this debt should be denied pursuant to §523(a)(6) as a breach of his fiduciary duties, fraud, defalcation, larceny, conversion, and embezzlement.

**FIFTH CLAIM FOR RELIEF**

**Objection to Dischargeability of Debt - Willful and Malicious Injury to Another Entity *and/or* Property of Another Entity**

**11 U.S. C. § 523(a)(6)**

**By Plaintiff against Defendant Jacqueline Judenfriend**

92. Plaintiff reincorporates paragraphs 1 through 91 as through set forth in full herein.

93. Plaintiff alleges, that the aforesaid interferences of Defendant Jacqueline Judenfriend were intentional, willful, and malicious, in that she was seeking to advantage herself to the detriment of Plaintiff by jeopardizing the ongoing sublease contracts between the partners and subtenants, and in unlawfully using, retaining, holding, secreting, and/or converting personal property for her use and benefit, and for the use and benefit of Defendant. to the detriment and damage to Plaintiff.

94. Plaintiff alleges that the aforementioned conduct of Defendant Jacqueline Judenfriend was oppressive, fraudulent, and malicious.

**SIXTH CLAIM FOR RELIEF**

**Objection to Dischargeability of Debt - Debtor's Permitted Transfer, Removal, Destruction, and/or Concealment of Property of the Debtor. 11 U.S.C. § 727(a)(2)(A))**

**By Plaintiff against Defendants Barry Judenfriend and Jacqueline Judenfriend**

95. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 90 set forth above.

96. Plaintiff is informed and believes, and on that basis alleges, that, in an effort to hinder. delay or defraud creditors, Defendants transferred, removed, destroyed, and/or concealed and/or permitted to be transferred, removed, destroyed, and/or concealed portions of the Debtor's property within one year prior to filing the Bankruptcy Case. The includes but is not limited to certain property of the Partnership, and the alleged Tom Small security deposit.

97. Accordingly, Defendants are not entitled to a discharge under 11 U.S.C. §727(a)(2)(A).

**SEVENTH CLAIM FOR RELIEF**

**Objection to Dischargeability of Debt -Debtor's Concealment, Destruction, Mutilation, Falsification, and/or Failure to Keep and/or Preserve Financial Books and Records**

**11 U.S.C. § 727(a)(3)**

**By Plaintiff against Defendants Barry Judenfriend and Jacqueline Judenfriend**

98. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 91 set forth above.

99. Plaintiff is informed and believes and based thereon alleges, that both Defendants without justification concealed and/or destroyed and/or mutilated and/or falsified and/or failed to keep and/or preserve any recorded information, including books, documents, records and/or papers from which the Defendant's financial condition and/or business transactions, including the financial condition and or business transactions dealing with partnership property, and the alleged Tom Small security deposit, might be ascertained.

100. Accordingly, Defendant is not entitled to a discharge under 11 U.S.C. § 727(a)(3).

**EIGHTH CLAIM FOR RELIEF**

**Objection to Discharge Based Upon Debtor's Knowing and Fraudulent False Oath and/or Account Made in Connection With Bankruptcy Case.**

**11 U.S.C. § 727(a)(4)(A)**

**By Plaintiff against Defendants Barry Judenfriend and Jacqueline Judenfriend**

101. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 91 set forth above.

102. Plaintiff is informed and believes, and on that basis alleges, that Defendants knowingly and fraudulently, in connection with his Bankruptcy Case, made a false oath and/or account by not disclosing in their Schedules, and/or Statement of Financial Affairs, and/or their testimony at his 341 (a) examination and/or otherwise any and all information, books, records, and other information regarding the location and disposition of assets in this case The includes but is not limited to certain property of the Partnership, and the alleged Tom Small security deposit.

103. Accordingly, Defendants are not entitled to a discharge under 11 U .S.C. § 727(a)(4)(A)...

**NINTH CLAIM FOR RELIEF**

**Objection to Discharge of Debtor Based Upon Debtor's Failure to Explain Satisfactorily Any Loss of Assets to Meet the Debtor's Liabilities.**

**11 U.S.C. § 727(a)(5)**

**By Plaintiff against Defendants Barry Judenfriend and Jacqueline Judenfriend**

104. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 91 set forth above.

105. Defendants have failed to satisfactorily explain, any loss of assets or deficiency of assets to meet Defendant's obligations, including the obligation owed to Plaintiff, based upon his failure to disclose in their Bankruptcy Schedules, and/or Statement of Financial Affairs, and/or their testimony at his 341 (a) examination and/or otherwise any and all information regarding the location and disposition of Partnership assets in this matter. The includes but is not limited to certain property of the Partnership, and the alleged Tom Small security deposit.

106. Accordingly, Defendants are not entitled to a discharge under 11 U.S.C. § 727(a)(5).

**TENTH CLAIM FOR RELIEF**

**For Attorneys Fees**

**By Plaintiff against Defendants Barry Judenfriend and Jacqueline Judenfriend**

107. Plaintiff realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 106 set forth above.

108. In the event Plaintiff prevails in this matter, and/or in the underlying state court matter, Defendants are liable for attorneys fees and costs as allowed by law. This includes the attorneys fees provision in the $12,800 Promissory Note between Plaintiff and Defendant, and all other applicable bases therefore.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Bankruptcy Rule 9015-2, Plaintiff hereby demands a jury trial for any and all matters that may be tried by jury. Pursuant to these same authorities, at this time, Plaintiff does not consent to a jury trial conducted by the bankruptcy court. Plaintiff reserves the right to subsequently elect that the jury trial in this action would be triable by this court.

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendants Barry Judenfriend, Barry Judenfriend "dba" Judenfriend Insurance Services, and Jacqueline Judenfriend, as follows:

A. For a judicial determination that the debts and other amounts due and owing to Plaintiff by Defendants are nondischargeable upon one or more of the grounds set forth herein and the amount of such debt;

B. For Judgment based upon the findings of fact and Judgment of the Superior Court of the County of Los Angeles, State of California, concerning the facts and issues raised herein;

C. For a money judgment for damages on the First, Second, Third, Fourth, and Fifth Claims for Relief in an amount to be determined at trial;

D. For pre-judgment and post-judgment interest;

E. For attorneys. fees and costs per the promissory note executed by Defendant in favor of Plaintiff, and for attorneys fees and costs for suit incurred herein as otherwise alleged by law; and

F. For such other relief that the Court determines is just and proper.

RESPECTFULLY SUBMITTED,

Date: July 6, 2011

BY

Nicholas F. Barton, In Pro Per

RECEIVED
JUL 08 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
Deputy Clerk

FORM B104 (08/07) 2007 USBC, Central District of California

## ADVERSARY PROCEEDING COVER SHEET
(Instructions on Page 2)

**ADVERSARY PROCEEDING NUMBER**
(Court Use Only)

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Nicholas Barton | Barry I. Judenfriend, individually and dba Judenfriend Insurance services; and Jacqueline Anne Judenfriend |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>In Pro Per | **ATTORNEYS** (If Known)<br>Ronald Michelman<br>Michelman & Michelman, LLP<br>20265 Ventura Boulevard, Suite "D" |
| **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☑ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☑ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
Plaintiff sustained losses and damages as a resutl of false representations/pretenses, and actual fraud by Defendant Barry Judenfriend per 11 usc 523(a)(2); Misrepresented his financial condition per 523(a)(2); Committed Fraud/Defalcation in a fiduciary capacity arising from parnereship oer 523(a)(4); Defendants committed willful/malicious injury per 523(a)(6); etc...

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property - §542 turnover of property
- ☐ 12-Recovery of money/property - §547 preference
- ☐ 13-Recovery of money/property - §548 fraudulent transfer
- ☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☒ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☒ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☒ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| | |
|---|---|
| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
| ☒ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought
Non-discharge under 11 USC 727(a)(2), (a)(3), (a)(4), (a)5)

Jury Demanded

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Barry I. Judenfriend, individually and dba Judenfriend Insurance services; et al. | | BANKRUPTCY CASE NO.<br>2:11-bk-35709-S |
| DISTRICT IN WHICH CASE IS PENDING<br>Central | DIVISIONAL OFFICE<br>Los Angeles | NAME OF JUDGE<br>Hon. Sandra R. Klein |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>7/8/11 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>Nicholas Barton, Esq., In Pro Per | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 12011 San Vicente Boulevard, Suite 540, Los Angeles, California 90049.

A true and correct copy of the foregoing document described as **ADVERSARY PROCEEDING COVER SHEET, BLANK SUMMONS AND NOTICE OF STATUS CONFERENCE, COMPLAINT OBJECTING TO DISCHARGABILITY OF DEBTS AND FOR NONDISCHARGEABILITY OF DEBTS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ***Fill in Date Document is Filed,*** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On ***July 8, 2011,*** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

SEE ATTACHED SERVICE LIST

Chambers copy to Hon. Judge Sandra Klein, 255 E. Temple St., Courtroom 1575, Los Angeles, CA 90012

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ***Fill in Date Document is Filed,*** I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 7/8/2011 | Kim Ong | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

| In re: Barry I Judenfriend and Jacqueline Anne Judenfriend<br><br>Debtor(s). | CHAPTER: 7<br><br>CASE NUMBER: 2:11-bk-35709-SK |
|---|---|

**ADDITIONAL SERVICE INFORMATION (if needed):**

Office of The United States Trustee
725 S. Figueroa Street
Suite 2600
Los Angeles, CA 90017

Trustee:

David L. Hahn
Hahn Fife & Co. LLP
22342 Avenida Empresa, Suite 260
Rancho Santa Margarita, CA 92688

Debtors:

Barry Judenfriend
1001 Tiverton Avenue, #4108
Los Angeles, CA 90024

Jacqueline Anne Judenfriend
1001 Tiverton Avenue, #4108
Los Angeles, CA 90024

Debtor's Attorney:

Ronald Michelman
Michelman & Michelman, LLP
20265 Ventura Boulevard, Suite "D"
Woodland Hills, California 91364

Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number

Nicholas Barton (#183040)
12011 San Vicente Boulevard, Suite 540
Los Angeles, California 90049
ph (310)820-7100
fax (310)472-9080
nicholas@brentwoodptrs.com

*Attorney for Plaintiff* Attorney In Pro Per

FOR COURT USE ONLY

RECEIVED
JUL 08 2011
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: Deputy Clerk

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

In re: Barry I Judenfriend and Jacqueline Anne Judenfriend

Debtor.

CHAPTER 7

CASE NUMBER 2:11-bk-35709-SK

ADVERSARY NUMBER

Nicholas Barton

Plaintiff(s),

vs.

Barry I. Judenfriend, individually and dba Judenfriend Insurance Services; and Jacqueline Anne Judenfriend

Defendant(s).

*(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)*

## SUMMONS AND NOTICE OF STATUS CONFERENCE

TO THE DEFENDANT: A Complaint has been filed by the Plaintiff against you. If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint. You must also send a copy of your written response to the party shown in the upper left-hand corner of this page. Unless you have filed in duplicate and served a responsive pleading by ____________________, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

**Hearing Date:** **Time:** **Courtroom:** **Floor:**

- [x] **255 East Temple Street, Los Angeles**
- [ ] **411 West Fourth Street, Santa Ana**
- [ ] **21041 Burbank Boulevard, Woodland Hills**
- [ ] **1415 State Street, Santa Barbara**
- [ ] **3420 Twelfth Street, Riverside**

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference. Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval. The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: ____________________

**KATHLEEN J. CAMPBELL**
**Clerk of Court**

By: ____________________
*Deputy Clerk*

| In re (SHORT TITLE)<br>Barry I Judenfriend and Jacqueline Anne Judenfriend<br>Debtor(s). | CASE NO.: 2:11-bk-35709-SK |
|---|---|

**NOTE**: When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
12011 San Vicente Boulevard, Suite 540, Los Angeles, California 90049

A true and correct copy of the foregoing document described as SUMMONS AND NOTICE OF STATUS CONFERENCE ______ will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d), and **(b)** in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On ______ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☐ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On 7/8/11 ______ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

see attached service list

☐ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on ______ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method) by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Judge's Copy - Honorable Sanrda R. Klein, 255 E. Temple St., Courtroom 1575, Los Angeles, California 90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 7/8/11 | Kim Ong | |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

| | | | |
|---|---|---|---|
| In Re | Barry I Judenfriend and Jacqueline Anne Judenfriend, | Chapter | 7 |
| | Debtors | Case No. 2:11-bk-35709-SK | |

**SERVICE LIST**

**Office of The United States Trustee**
**725 S. Figueroa Street**
**Suite 2600**
**Los Angeles, CA 90017**

**Trustee:**

**David L. Hahn**
**Hahn Fife & Co. LLP**
**22342 Avenida Empresa, Suite 260**
**Rancho Santa Margarita, CA 92688**

**Debtors:**

**Barry Judenfriend**
**1001 Tiverton Avenue, #4108**
**Los Angeles, CA 90024**

**Jacqueline Anne Judenfriend**
**1001 Tiverton Avenue, #4108**
**Los Angeles, CA 90024**

**Debtor's Attorney:**

**Ronald Michelman**
**Michelman & Michelman, LLP**
**20265 Ventura Boulevard, Suite "D"**
**Woodland Hills, California 91364**